# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

EDITH FLORES-ESPINOZA,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 4:25-cv-00791-RK
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JIM C. ARNOTT, SHERIFF GREENE⠀⠀)
COUNTY, MO; et al.,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀)

## ORDER

Petitioner Edith Flores-Espinoza is currently being held in custody of the U.S. Department of Homeland Security, Immigration and Customs Enforcement at the Greene County Justice Center in Springfield, Missouri. A citizen of Mexico, Petitioner has been residing in the United States for a number of years. She has been charged with being present in the United States without having been admitted or paroled and as an immigrant not in possession of a valid unexpired immigrant visa, and removal proceedings have begun against her. Federal immigration authorities have detained her without a bond hearing while the removal proceedings are pending.

Before the Court is Petitioner's verified petition for writ of habeas corpus. (Doc. 1.) She argues that under federal immigration law she cannot lawfully be detained without bond but is entitled to a bond hearing, and seeks release from detention or a bond hearing, along with other declaratory and injunctive relief related to her detention. Federal Respondents[1] filed a response in opposition, and Petitioner filed a reply. (Docs. 3, 5, respectively.) After careful consideration and review, the Court agrees that under federal immigration law, Petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226. Accordingly, the Court **ORDERS** that the verified petition for writ of habeas corpus is **GRANTED** as set out below. The Court **FURTHER ORDERS** that Petitioner be released or granted a bond hearing within 10 days of the date of this Order.

---

[1] "Federal Respondents" refers to Respondents Kristi Noem, Secretary, U.S. Department of Homeland Security; Christopher Chamberlain, Acting Assistant Field Office Director for the Kansas City Field Office; and the U.S. Department of Homeland Security. Respondent Greene County Sheriff Jim C. Arnott did not file a response.

## Background

The facts in this case are largely uncontroverted and not in dispute. Petitioner is a citizen and national of Mexico. (Doc. 1 at ¶ 26; Doc. 5-1 at ¶ 1.) She entered the United States unlawfully approximately twenty-five years ago when she was fifteen years old and has since resided within the United States. (Doc. 5-1 at ¶ 2.) She has no criminal record. (*Id.* at ¶ 11; *see* Doc. 1-1 at 6.) On September 30, 2025, Petitioner went to Fort Leonard Wood, a military base, to see her oldest son graduate from Advanced Initial Training as part of his service in the Army National Guard. (*Id.* at ¶¶ 3, 5.) Petitioner was detained by military police regarding her identification when she attempted to enter the military base; federal immigration authorities were contacted who took her into federal custody.[2] (*Id.* at ¶ 6; *see* Doc. 1-1 at 6.)

On the same day, Petitioner was charged as an "alien present in the United States who has not been admitted or paroled" and as an "immigrant not in possession of a valid unexpired immigrant visa" with issuance of a DHS Form I-862 Notice to Appear, beginning removal proceedings against her. (*See* Doc. 1-1.) Petitioner accordingly appeared before an Immigration Judge on October 8, 2025, via video hearing. At that hearing, the Immigration Judge found that he did not have jurisdiction to grant a bond hearing pursuant to a September 5, 2025 decision by the Board of Immigration Appeals, *In Matter of Yajure Hurtado*, 2025 WL 2674169 (BIA Sept. 5, 2025). Two weeks later, the Immigration Judge ordered that Petitioner be removed to Mexico. (Doc. 3-2 at 3.) Petitioner filed a motion to reopen/for reconsideration before the Immigration Judge, (Doc. 5-3), which was granted on November 17, 2025, (Doc. 6 at 15-16). In this habeas action, Petitioner seeks release from detention or a bond hearing for bond or conditional parole consideration as otherwise authorized under federal immigration law while the removal proceedings are pending.

## Discussion

Title 28 U.S.C. § 2241 authorizes federal courts to grant a writ of habeas corpus on application of a person (including an alien unlawfully in the United States) held "in custody in violation of the Constitution or laws or treaties of the United States." *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). In this habeas case, the issue is one of statutory interpretation: whether, as to pre-removal-order detention otherwise authorized under federal immigration law, (1) Petitioner

---

[2] Petitioner has not in any way challenged the basis for her initial detention either by military police or federal immigration authorities in this proceeding.

is subject to mandatory detention without bond as authorized under 8 U.S.C. § 1225(b)(2)(A)—as Federal Respondents argue—or (2) whether Petitioner is instead entitled to a bond hearing and consideration of bond or conditional parole as authorized under 8 U.S.C. § 1226(a).

## I. Jurisdiction

Before reaching the merits of Petitioner's habeas argument, the Court considers Federal Respondents' argument that the Court lacks subject-matter jurisdiction over this habeas action pursuant to two provisions of federal immigration law:  8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9).

### A. Section 1252(g)

Section 1252(g) strips the subject-matter jurisdiction (including habeas jurisdiction) of a federal court as to "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

Contrary to Federal Respondents' suggestion that § 1252(g) employs "deliberately broad and expansive language," the jurisdictional bar is instead relatively discrete and narrow.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020).  In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), the Supreme Court held that § 1252(g) "applies only to three discrete actions that the Attorney General may take:  her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Id.* at 482 (emphasis in original).  The Supreme Court rejected the argument that § 1252(g) "refers to all claims arising from deportation proceedings," and recognized that only these three decisions or actions are implicated, all three of which occur "along the road to deportation" and which "represent the initiation and prosecution of various stages in the deportation process."  *Id.* at 482, 483; *see Jennings v. Rodriguez*, 583 U.S. __, 138 S. Ct. 281, 294 (2018) (Alito, J., plurality) (referring to the Supreme Court's prior decision in *Reno* as "read[ing] the language [of § 1252(g)] to refer to just those three specific actions themselves," and rejecting an interpretation of the jurisdiction-bar provision to "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General").

Here, Petitioner does not challenge the discretionary decision to commence proceedings (or the decision to detain her per se) but instead only challenges (as a pure question of law[3])

---

[3] Federal Respondents agree, generally, that Petitioner "raise[s] an issue of statutory interpretation

3

whether she is entitled to a bond hearing as required under the INA. The Court agrees with numerous other federal courts that have found § 1252(g) does not preclude the Court's habeas jurisdiction challenging the legality of an alien's detention without bond. *See, e.g.*, *Hernandez-Cuevas v. Olson*, No. 25-00830-CV-W-BP, at *3 (W.D. Mo. Nov. 5, 2025) (slip op.); *Avila v. Bondi*, No. 25-3741, 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Hernandez Marcelo v. Trump*, __ F. Supp. 3d __, 2025 WL 2741230, at *5 (S.D. Iowa Sept. 10, 2025); *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 395038, at *3 (S.D. Iowa Sept. 30, 2025) (recognizing that the federal government's argument that § 1252(g) bars a claim challenging detention without bond hearing "has been repeatedly rejected" by numerous federal courts).

**B.    Section 1252(b)(9)**

Federal Respondents' reliance on § 1252(b)(9) as a bar to subject-matter jurisdiction fares little better. By its plain language, subsection (b)(9) channels judicial review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" until after a final removal order is entered through a petition for review before the appropriate circuit court of appeals. The Supreme Court, largely adopting Justice Alito's plurality reasoning in *Jennings*, has recognized that subsection (b)(9)—like subsection (g)—employs "targeted language" that "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents of the Univ. of Cal.*, 591 U.S. at 19 (cleaned up); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (Alito, J., plurality) (applying *Jennings* and finding that subsection (b)(9) did not bar habeas petition challenging application of the mandatory-detention requirement under 8 U.S.C. § 1226(c)). Subsection (b)(9) does not apply here because Petitioner's habeas claim raising a question of law as to whether she is entitled to a bond hearing under the INA does not seek review of the removal order.

In short, the Court finds with little difficulty that it has habeas jurisdiction to consider Petitioner's narrow legal (statutory interpretation) challenge to the lawfulness of her detention without a bond hearing. In other words, the Court has jurisdiction to consider whether Petitioner is entitled to a bond hearing under federal immigration law while detained during the pending removal proceedings. *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106, 119

---

regarding the law governing detention during removal proceedings." (Doc. 3 at 14.)

(2020) (recognizing that "[h]abeas has traditionally been a means to secure *release* from unlawful detention," and that "habeas is at its core a remedy for unlawful executive detention").

## II.    Plaintiff's Statutory Habeas Claim

In this habeas action, Petitioner argues that (1) as a matter of law she is not subject to the mandatory-detention provision under 8 U.S.C. § 1252(b)(2)(A) but is instead entitled to a bond hearing as authorized under 8 U.S.C. § 1226(a), and (2) the Due Process Clause similarly requires that she be afforded a bond hearing.  The Court begins—and ends—with the statutory claim. Because the Court finds that Petitioner is entitled to habeas relief on the basis of her statutory claim, the Court does not consider her overlapping due process claim.

### A.    Pre-Removal-Order Detention Provisions of the INA

Two statutory provisions of the INA primarily govern pre-removal-order detention.[4]  The first, 8 U.S.C. § 1225(b)(2)(A)—as relied on by Federal Respondents here—requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  *See Jennings*, 583 U.S. at 297 (noting that § 1225(b)(1) and (2) generally "mandate detention of applicants for admission until certain proceedings have concluded").  The second, 8 U.S.C. § 1226(a), provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," subject to release on bond or conditional parole after a bond hearing.  *See Jennings*, 583 U.S. at 306 (recognizing that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention"); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (outlining the administrative procedure for an alien detained under § 1226(a) to "apply for release on bond or conditional parole," including the initial administrative request followed by subsequent hearings before an immigration judge and ultimately the Board of Immigration Appeals).

---

[4] A third provision, codified at 8 U.S.C. § 1231, governs detention following a final order of removal.  Neither party argues that section 1231 applies in this case.  Although an order of removal was initially entered against Petitioner, it did not become a *final* order of removal but instead the Immigration Judge granted Petitioner's motion to reopen/for reconsideration.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (recognizing  that "§ 1226 governs the detention of aliens until § 1231's 'removal period' begins).

Federal Respondents argue that because Petitioner is an "applicant for admission," she is therefore subject to § 1225(b)(2)'s mandatory-detention provision. Petitioner argues as a matter of statutory interpretation, § 1225(b)(2)(A)'s mandatory-detention provision "does not apply to [aliens] who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings . . . ." (Doc. 1 at ¶ 65.) Rather than § 1225(b)(2)(A), Petitioner argues that § 1226(a) applies to her detention pending removal proceedings and she is therefore entitled to a bond hearing as authorized under that statutory scheme.

As Petitioner (correctly) observes, an overwhelming number of district courts analyzing the exact same statutory-interpretation question have found, albeit for somewhat varying reasons and rationale, that habeas petitioners in a similar or the same position to Petitioner are entitled to a bond hearing. These courts have soundly rejecting the federal government's argument that "§ 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' [and thus subject to removal] because they entered the United States without inspection." *Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *2 (D. Minn. Oct. 1, 2025) (joining the "chorus" of district courts around the country that have granted habeas relief in these circumstances) (collecting cases). Some federal district courts have emphasized that mandatory detention under § 1225(b)(2) only applies to "applicants for admission" who are "seeking admission," recognizing that the latter statutory phrase "refers to the present-tense action of seeking to be admitted." *Hernandez Marcelo v. Trump*, __ F. Supp. 3d __, 2025 WL 2741230, at *7 (S.D. Iowa Sept. 10, 2025); *see Martinez v. Hyde*, 792 F. Supp. 3d 211, 214-23 (D. Mass. 2025). The Court is persuaded by the reasoning and analysis of these courts.

This case—and the parties' arguments—turn on a legal question of statutory interpretation.[5] "When interpreting a statute, [the Court] begin[s] with the statute's plain language,

---

[5] Some habeas cases raising the same issue have seemed to consider more of a factual issue as to the actual detention-authority invoked by the federal government to detain an alien during removal proceedings. In *Jose J.O.E. v. Bondi*, __ F. Supp. 3d __, 2025 WL 2466670 (D. Minn. 2025), for example, the district court emphasized in granting habeas relief that the petitioner "was [in fact] arrested on a warrant pursuant to § 1226 . . . and detained under authority of § 1226 and its implementing regulations," and that the petition was therefore "subject to § 1226(a)'s discretionary detention regime." *Id.* at *8; *see Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025) (recognizing in that case that, in addition to the court's statutory interpretation analysis, the petitioner was released "'in accordance with Section 236 of the Immigration and Nationality Act' (i.e., 8 U.S.C. § 1226)," and that following his release, "[f]ederal officials have continued to treat Petitioner as being governed by

6

giving words the meaning that proper grammar and usage would assign them. If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Union Pac. R.R. Co. v. STB*, 113 F.4th 823, 833 (8th Cir. 2024). Generally, "differences in statutory language convey differences in meaning." *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1049 (8th Cir. 2017). Put another way, "[w]hen interpreting a statute, courts typically do not presume that Congress has used superfluous words in its enactments." *Id.* at 1050.

The question raised here is principally whether Petitioner may lawfully be detained without bond under the mandatory-detention provision, § 1225(b)(2). Put another way, the question is whether § 1225(b)(2)(A), by its plain language, applies to Petitioner. As set out above, § 1225(b)(2)(A) requires detention without bond for an alien who is an applicant for admission who is seeking admission and is found not to be clearly and beyond a doubt admissible by the examining immigration officer. The statutory language within the mandatory-detention provision under § 1225 thus requires mandatory detention not just for "applicants for admission" but for applicants for admission who are "seeking admission." Federal Respondents argue that by definition all aliens who are "applicants for admission" are also as a matter of statutory interpretation "seeking admission." This interpretation renders the statutory phrases "applicants for admission" and "seeking admission" as synonymous. The Court is not persuaded.

In support of their argument that these two statutory phrases are synonymous, Federal Respondents point to two other subdivisions under § 1225(a). First, they recognize (correctly) that subsection (a)(1) defines "applicant[s] for admission" as broadly encompassing any "alien present

---

§ 1226 since then," by issuing an arrest warrant that "states it is authorized 'pursuant to section 236 of the Immigration and Nationality Act,'" and that an immigration judge found in an order that the petitioner "is subject to mandatory detention under the Laken Riley Act," as "a reference to § 1226, not § 1225").

Unlike these cases, it does not appear that a warrant was ever issued for Petitioner's arrest or detention. Instead, it appears that Petitioner was arrested and detained by federal law enforcement without a warrant (*see* 8 U.S.C. § 1357(a)(2)) and was only issued a Notice to Appear Form I-862. Federal Respondents do not argue—and the Court would likely not be much persuaded—that the inverse analysis of the cases noted above should apply: that is, that if no warrant is issued to arrest/detain an alien otherwise placed in removal proceedings that *only* § 1225(b)(2)(A) applies and that § 1226(a) *cannot* apply. Moreover, the Court notes that Petitioner does not suggest that her detention is per se unlawful, only that she is entitled to a bond hearing and cannot be detained without bond under § 1225(b)(2)(A). In short, Federal Respondents in this action squarely rely on § 1225(b)(2)(A) as the legal authority that allows them to detain Petitioner without bond. The Court proceeds accordingly to address the legal question of whether Petitioner may lawfully be held without bond under § 1225(b)(2)(A).

in the United States who has not been admitted[6] or who arrives in the United States," i.e., that the statutory phrase does not refer only to an alien who has "applied" for legal admission into the United States in the common sense of the term.[7]  Second, Federal Respondents rely on subsection (a)(3) which requires inspection by immigration officers of "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States . . . ."  Reading these provisions together, Federal Respondents argue that "a person 'seeking admission' is merely an alternate way of saying someone is applying for admission—that is, he or she is an 'applicant for admission'—which includes . . . those individuals already present within the country without admission."  (Doc. 3 at 9.)

The Court is not persuaded that the plain meaning of the statutory language above supports Federal Respondents' conclusion.  Federal Respondents' argument depends on understanding the statutory phrase "applicants for admission" in a general or common plain language sense, i.e., as referring to someone who is applying to be admitted into the United States.  But this statutory phrase is a term of art; Congress gave it a broader meaning that is not dependent on or does not take into account an alien having taken or contemplated taking any action or step to obtain lawful admission into the United States.  Instead, the broader meaning of the term enacted by Congress depends more so on the simple geographical and physical location of an alien, as "present in" or having "arrived in" this country, in conjunction with the alien's non-citizen or non-admitted legal status.  The Court is not at liberty to override or to disregard this statutory term of art with a specific congressionally enacted defined meaning.  *See Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *5 (D.N.J. 2025); *see also Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) ("When a

---

[6] In the federal immigration context, the terms "admission" and "admitted" are specially defined to mean "the lawful entry of an alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(13)(A).  By way of applying this definition, federal immigration law provides that an immigrant can be admitted into the United States only if, with certain exceptions,

> at the time of application he (1) has a valid unexpired immigrant visa or was born subsequent to the issuance of such visa of the accompanying parent, and (2) presents a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General.

8 U.S.C. § 1181(a).  An alien may also be admitted into the United States as a refugee.  *See* 8 U.S.C. § 1157.

[7] Indeed, federal immigration law separately defines "applica*tion* for admission" as "refer[ring] to the application or admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa."  8 U.S.C. § 1101(a)(4) (emphasis added).

statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (internal quotation marks omitted)).

Unlike the statutory phrase "applicant for admission," the phrase "seeking admission" as used in this statutory scheme is not itself defined. Moreover, as the Supreme Court has recognized, when Congress uses the same term in a statute, it "usually has the same meaning," while "different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). The phrase "seeking admission," which qualifies the phrase "applicant for admission" in the plain text of § 1225(b)(2)(A) is a separate statutory phrase with its own meaning. To construe these two phrases as merely synonyms would be inconsistent with Congress's clear intent that the latter has a broader definition than a plain-language dictionary understanding might otherwise suggest. And doing so would "completely ignore, or even read out, the term 'seeking' from 'seeking admission.'" *Hernandez-Cuevas*, No. 25-00830-CV-W-BP, at *5 (slip op.) (rejecting argument that because "Plaintiff is deemed an 'applicant for admission' . . . he must therefore also be deemed to have been 'seeking admission' within the meaning of § 1225(b)(2)(A)").

In addition to subsection (a)(1), Federal Respondents suggest that the "or" in subsection (a)(3)—requiring inspection for all aliens "who are applicants for admission *or* otherwise seeking admission"—is used as an appositive indicating that the latter "phrase . . . is synonymous with what precedes it." *United States v. Woods*, 571 U.S. 31, 45 (2013). As Justice Scalia explained in the full explanation in *Woods*, however, rather than as an appositive, the "ordinary use [of the conjunction 'or'] is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Id.* This ordinary and common use of the conjunction "or" is the proper and most natural understanding as used in subsection (a)(3) here.

The term "otherwise" has meaning. It indicates something *different*—whether as suggesting "in a different manner," "by other means," "in other respects," or as "link[ing] a set of examples to a general phrase and giv[ing] [the general phrase] more definite meaning . . ." *Fischer v. United States*, 603 U.S. 480, 491 (2024); *see Begay v. United States*, 553 U.S. 137, 151 (2008) (Scalia, J., concurring) (noting that the statutory use of the word "otherwise" in the subject statute in that case "draws a substantive connection between two sets only on one specific dimension—i.e., whatever follows 'otherwise'"). The most natural grammatical reading of subsection (a)(3) indicates that the best reading of this subsection as a whole is that "or otherwise" modifies or links the categories of aliens—i.e., applicants for admission, those who are seeking admission, those

who are seeking readmission to, or those who are seeking transit through—for whom inspection is required. The term "alien" means "any person who is not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). As defined under § 1225(a)(1), an applicant for admission— separately defined from an alien who submits an application for admission, *see* note 7, above— falls within a subcategory of "aliens" or noncitizens of the United States when the alien is present in or has arrived in the United States. Even to the extent the phrase "or otherwise" links seeking admission to the subcategory of aliens as applicants for admission (i.e., those aliens who are present in or have arrived in the United States), this does not suggest that the terms are interchangeable. At most, it suggests that *some* aliens who are considered applicants for admission may also be seeking admission (or readmission to or transit through) the country. The logical relationship between these phrases is not one in which the latter is a necessary condition for the former. More straightforward: Just because an alien is present in or has arrived in the United States, however, does not necessarily mean that that alien is seeking admission or seeking readmission to or seeking transit through the United States. As set out above, the phrase "seeking admission" has a different meaning, particularly in light of the special broader and geographically-dependent definition ascribed to the statutory phrase "applicant for admission" in the federal immigration law statutory scheme.

Even if the "or otherwise" clause of subsection (a)(3) could be naturally read, as Federal Respondents suggest, to link "applicant for admission" and "seeking admission," it still would not follow that the terms are synonymous or wholly encompassing. The Court must not read statutory language "in isolation" but as part of the whole statute. *3M Co. v. Comm'r of Internal Revenue*, 154 F.4th 574, 580 (8th Cir. 2025) (internal quotation marks omitted). In conjunction with the "presumption that a given term means the same thing throughout a statute," *id.* (cleaned up), the best reading of subsection (a)(3) is one in which that statutory phrase "seeking admission" has separate meaning from the statutory phrase "applicant for admission." In other words, while an applicant for admission *can* also be seeking admission, an applicant for admission is not as a matter of statutory interpretation *always* or *necessarily* also seeking admission. Nothing in the grammatical structure or plain text in subsection (a)(3) alone alters this conclusion.

For these reasons, the Court joins the many other district courts who have rejected as a matter of statutory interpretation the federal government's argument that an alien present within the United States without having legal authority or authorization to be within the United States is

by definition also "seeking admission" because they are an "applicant for admission" under federal immigration law. Federal Respondents have not presented any compelling statutory-interpretation argument that when § 1252(b)(2)(A) refers to an alien "seeking admission" for purposes of the mandatory-detention provision, Congress was simply referring to all noncitizen aliens present in the United States without having been admitted (i.e., to applicants for admission).[8] Thus, although Petitioner does appear to be an "applicant for admission" as that phrase is used (and defined) under § 1225(a) to the extent she was present within the United States without having been legally admitted into the United States, nothing before the Court suggests that Petitioner was also "seeking admission." Fundamentally, that is, nothing in the current record shows that when she was detained, she had sought or taken any tangible action or step to obtain legal authorization to enter or to be present in the United States as a noncitizen. Federal Respondents point to no evidence or facts (and have presented no argument) that she was thus "seeking admission" into the United States beyond her mere presence in the United States as an alien. As a matter of statutory interpretation, Petitioner's mere (unlawful) presence within the United States—making her an "applicant for admission" under this statutory framework—does not itself trigger § 1225(b)(2)(A)'s mandatory detention-without-bond provision.

Rather than § 1225(b)(2)(A), as Federal Respondents recognize themselves, § 1226(a) "applies to aliens 'arrested and detained pending a decision' on removal."[9] (Doc. 3 at 10.) Unlike

_____

[8] This argument would seem to hold more water, however, to the extent subsection (a)(1)'s definition of the phrase "applicants for admission" includes aliens who present themselves for inspection at a port of entry seeking to be admitted into the United States proper. For this subgroup, by presenting themselves at a port of entry for inspection by immigration officials, they become both applicants for admission who are seeking admission at the same time, and thus absent any applicable exception, would be subject to detention without bond under § 1225(b)(2)(A) were they found to be not clearly and beyond a doubt entitled to admission. The Court recognizes that as to this point, Federal Respondents counsel against the interpretation of § 1225(b)(2)(A) the Court adopts here because it would "inexplicably reward[] aliens, like [Petitioner], who crossed the border unlawfully and did not present for inspection . . . making them bond-eligible, while arriving aliens—who present themselves for inspection at a port of entry—are subject to mandatory detention under Section 1225." (Doc. 3 at 12.) It is not the Court's role to question the efficacy or wisdom of Congress' policy determinations; the Court's role is to interpret and apply statutes duly enacted by Congress. That is all the Court endeavors to do here. Because the Court finds that a plain-text interpretation of § 1225(b)(2)(A) supports that the statutory phrases "applicant for admission" and "seeking admission" are not merely interchangeable synonyms, the Court's analysis begins and ends with the plain text.

[9] As noted above, Petitioner does not assert any claim that her detention pending the final outcome of the removal proceedings that have been instituted against her is unlawful or not authorized under federal immigration law at all; rather, she only argues that her detention without possibility of bond is unlawful.

§ 1225, however, § 1226 authorizes pre-removal-order detention but with the possibility of release on bond or conditional parole pending the outcome of the removal proceedings. *See also Jennings*, 583 U.S. at 289 (recognizing that § 1225(b) "authorizes the Government to detain certain aliens seeking admission into the country," while § 1226 at the same time also "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings").

Unlike the Immigration Judge below, the Court is not bound by and need not (and does not) defer to the BIA's decision in *Yajure-Hurtado* or DHS's own interpretation of federal immigration law, which the Court finds is inconsistent with the plain statutory language. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024). The Court rejects Federal Respondents' argument as a matter of statutory interpretation that Petitioner is deemed to be "seeking admission" for purposes of § 1225(b)(2)(A)'s mandatory-detention provision solely because she was within the United States without having been admitted. Congress enacted the relevant statutes, including the statutory phrases "applicant for admission" and "seeking admission" with specific meaning under the federal immigration statutory framework. The phrases are not merely synonyms but carry a different meaning, purpose, and effect in this statutory scheme. Once again, the Court only endeavors here to faithfully apply the plain language and the plain meaning of the statutes as enacted by Congress. Based on the plain text and meaning, the Court finds that federal immigration law does not authorize Petitioner's mandatory detention under § 1225(b)(2)(A). Instead, Petitioner is entitled to bond consideration under § 1226(a) as an alien detainee in federal custody pending final resolution of the removal proceedings instituted against her.

**Conclusion**

For the reasons explained above, the Court **ORDERS** that the Petition for Writ of Habeas Corpus, (Doc. 1), is **GRANTED**. The Court **FURTHER ORDERS** that Petitioner be released or granted a bond hearing within 10 days of the date of this Order.

**IT IS SO ORDERED**.


s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 1, 2025

12